## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROY ALISOGLU and NANCY ALISOGLU,

                    Plaintiffs,                No. 12-cv-10230
                                                  Hon. Gerald E. Rosen

vs.

CENTRAL STATES THERMO KING OF
OKLAHOMA, INC., an Oklahoma corporation,
4-STAR TRAILERS, INC., an Oklahoma
corporation, and OUTLAW CONVERSION, INC.,
a Texas corporation,

                    Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANT CENTRAL STATES' MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

### I. INTRODUCTION

This matter is presently before the Court on the Fed. R. Civ. P. 12(b)(2) Motion to

Dismiss Amended Complaint for Lack of Jurisdiction filed by Defendant Central States

Thermo King of Oklahoma, Inc. ("Central States"). Plaintiffs have responded to the

motion and Central States has replied.  Having reviewed and considered the parties'

briefs and the record of this matter, the Court has concluded that oral argument is not

necessary.  Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), this

matter will be decided "on the briefs."  This Opinion and Order sets forth the Court's

ruling.

## II. RELEVANT FACTUAL BACKGROUND

In July 2010, Plaintiffs Roy and Nancy Alisoglu, Michigan citizens, traveled to Oklahoma City, Oklahoma to purchase a 4-Star horse trailer with living quarters from Defendant Central States, a dealership located in Oklahoma City.  The Alisoglus gained knowledge of the trailer from viewing Central States' listing on a third-party marketplace website:  www.horsetrailerworld.com.  Central States' listings on this site allows viewers to access a website that Central States itself maintains:  www.trailersokc.com.   Visitors to this website can view pictures and details about the listed trailers.  The site also provides information as to whom to contact for price quotes.  However, customers are unable to purchase trailers or pay invoices via this website.

Upon viewing Central States' listing of a 4-Star trailer with an Outlaw interior that they were interested in, the Alisoglus contacted Central States via the toll-free telephone number provided in the listing.  Following that telephone conversation, a Central States employee emailed the Alisoglus additional pictures and details about the trailer.

The Alisoglus then arranged with the employee to visit the Central States Oklahoma City dealership on Saturday, July 10, 2010, even though the dealer is ordinarily closed for business on weekends.  During that July 10, 2010 visit, pursuant to the Alisoglus' request, Central States agreed to install a larger water tank and arranged for Defendant Outlaw Conversion, Inc. ("Outlaw") to install a DirecTV satellite dish on the trailer.  The Alisoglus then executed a purchase agreement and made a $40,000 down payment on the trailer.

2

After executing the purchase agreement, the Alisoglus returned to Michigan. Soon thereafter, Central States called them in order to secure payment of the remaining balance of the purchase price by the end of July so that the dealer could "close out its books." The Plaintiffs, accordingly, mailed Central States a cashier's check from Michigan for the balance of the purchase price on July 25, 2010. Then, in September 2010, the Alisoglus once again drove to Oklahoma to take delivery of the trailer.

On their way back to Michigan, however, Plaintiffs traveled through a storm and noticed that water was beginning to accumulate in the horse area of the trailer. They immediately contacted Central States to report the problem, and an employee at Central States directed them to contact Defendant 4-Star Trailers, Inc. ("4-Star"), the manufacturer of the trailer. The Alisoglus were then directed by 4-Star to contact Triple C Trailer Sales Inc., ("Triple C") in Watervliet, Michigan, the nearest authorized 4-Star dealer and repair center, which was 190 miles from the Alisoglus' home.

Triple C's first attempt to repair the trailer in November 2010 was unsuccessful as the leak continued. The Alisoglus again contacted Central States and were advised by both Central States and 4-Star to return the trailer to Triple C for more repair work. The Alisoglus complied and took the trailer to Triple C a total of seven times, but the problem persisted. In May 2011, Defendant Outlaw, the supplier and installer of the interior of the living quarters, arranged for the transfer of the trailer to its place of business in Stephenville, Texas for repair. Mr. Alisoglu thereafter traveled to Texas to inspect the trailer and was assured that the leak had been repaired. Outlaw then returned the trailer to the Plaintiffs in August 2011, but the trailer continued to leak.

As a result of the failure to repair the leak, the Alisoglus commenced this action against Defendants Central States, 4-Star, and Outlaw on January 18, 2012, alleging that each defendant violated the Magnuson-Moss Warranty Act, as well as Oklahoma state law.  *See* 15 U.S.C. § 2304(a)(4); OK. ST. T. 12A § 2-313.  Central States responded with a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  After Plaintiff filed an amended complaint, Central States filed the instant motion to dismiss the amended complaint.

### III. DISCUSSION

### A.   STANDARDS APPLICABLE TO MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Although this matter is before the Court on Defendant Central States' motion to dismiss, Plaintiffs have the burden of establishing that the exercise of jurisdiction over the defendant is proper.  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).  Where, as here, there has been no evidentiary hearing regarding personal jurisdiction, the plaintiffs "need only make a prima facie showing of jurisdiction." *Id.* (quoting *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)).  However, it is insufficient for the plaintiffs to merely reassert the allegations contained in their pleadings. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The plaintiffs must articulate specific facts to show that the court has jurisdiction.  *Id.*  The court must then consider all the facts presented in the pleadings and affidavits in a light most favorable to the plaintiffs, and does not weigh any contrary allegations offered by the defendant.  *Intera Corp v. Henderson*, 428 F.3d 605, 614 (6th Cir. 2005).

**B.    LIMITATIONS ON THE COURT'S EXERCISE OF PERSONAL JURISDICTION OVER A DEFENDANT**

Although both the Plaintiffs and Defendant seem to have glossed over this fact, it is worth noting that Plaintiffs brought this action in this Court pursuant to both federal question subject matter jurisdiction and diversity of citizenship.  Though this dual basis for subject matter jurisdiction could impact a court's personal jurisdiction analysis, as shown below, in this case, it does not.

A federal court sitting in diversity is limited in its exercise of personal jurisdiction by the state's long-arm statute and the Fourteenth Amendment's Due Process Clause. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir.2002) ("A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment.")   In general, this calls for application of the "minimum contacts" doctrine established by *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

Where, however, a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, the personal jurisdiction analysis depends on whether the federal statute in question contains a national service of process provision. The existence of a national service of process provision "confers personal jurisdiction in any federal district court over a defendant with minimum contacts to the United States." *Medical Mutual of Ohio v. DeSoto*, 248 F.3d 561, 567 (6th Cir. 2001) (quoting *United*

5

*Liberty Lobby Life Ins. Co. v. Ryan*, 958 F.2d 1320, 1330 (6th Cir. 1993)).  As the Sixth

Circuit explained in *DeSoto*,

> [T]he personal jurisdiction requirement restricts judicial power as a matter
> of individual liberty – the individual's due process right not to be subject to
> extra-territorial jurisdiction unless he has a sufficient relationship with the
> state asserting jurisdiction.  When, however, a federal court sitting pursuant
> to federal question jurisdiction exercises personal jurisdiction over a U.S.
> citizen or resident based on a congressionally authorized nationwide service
> of process provision, that individual liberty interest is not threatened.  In
> such cases, the individual is not being subject to extra-territorial
> jurisdiction, because the individual is within the territory of the sovereign –
> the United States – exercising jurisdiction.  In other words, when a federal
> court exercises jurisdiction pursuant to a national service of process
> provision, it is exercising jurisdiction for the territory of the United States
> and the individual liberty concern is whether the individual over which the
> court is exercising jurisdiction has sufficient minimum contacts with the
> United States.

248 F.3d at 567-68.

Here, Plaintiffs are asserting violations of the Magnuson-Moss Warranty Act, 15

U.S.C. § 2301 *et seq.,* as the basis for federal question jurisdiction.  The Magnuson-Moss

Act, however, does not authorize nationwide service.  *See Weinstein v. Todd Marine*

*Enterprises*, 115 F. Supp. 2d 668, 671 (E.D.Va.2000).  The Supreme Court has held that

when there is no provision authorizing nationwide service, federal courts must follow

Rule 4(k) of the Federal Rules of Civil Procedure, which, *inter alia*, limits a court's

exercise of personal jurisdiction to persons who can be reached by the forum state's long-

arm statute.  *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 (1987).

The end result of *Omni* is to require a court to apply in federal question cases such

as this case where there is no provision authorizing nationwide service of process a

personal jurisdiction test very similar to that used in diversity cases: "Where a federal

court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due process.'" *Bird v Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir.1992) (internal citations omitted)).

**C.    Michigan's Long-Arm Statute**

Under Michigan law, a Michigan forum may assert either general or limited jurisdiction over a non-resident corporation. *See* M.C.L. §§ 600.711; 600.715.  The Alisoglus do not claim that general personal jurisdiction over Central States exists. Therefore, the Court will only consider whether it may exercise limited personal jurisdiction over Defendant Central States.

Michigan's Long-Arm statute extends limited jurisdiction over non-resident corporations in the following instances:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.

M.C.L. § 600.715.

The Michigan Supreme court has held that the word "any" in M.C.L. § 600.715(1)

"means just what it says."  It includes each and every act of business in the state, and is satisfied by even "the slightest act of business in Michigan."  *Neogen*, 282 F.3d at 888; *Lanier v. American Bd. of Endodontics*, 843 F.2d 901, 905-06 (6th Cir. 1988) *cert. denied*, 488 U.S. 926 (1988) (quoting *Sifers v. Horen*, 385 Mich. 195, 199 n.2 (1971)).  In *Lanier*, the Sixth Circuit determined that the Illinois-based American Board of Endodontics' exchange of correspondence and telephone calls with a dentist in Michigan, including its collection of application fee as part of an agreement to consider her credentials for Board certification for practice in Michigan, constituted transaction of business in Michigan within meaning of Michigan long-arm statute. 843 F.2d at 906-908. In *Neogen*, the defendant, a Pennsylvania corporation, transacted business in Michigan by accepting blood samples for testing from Michigan, mailing the results to Michigan, making the results available to Michigan residents on a website, and accepting payment through the mail from Michigan.  *Neogen*, 282 F.3d at 888.  In *Dedvukaj v. Maloney*, 447 F. Supp. 2d 813 (E.D. Mich. 2006), this Court found the requirements of §600.715(1) satisfied where the defendant communicated with the Michigan plaintiff through email messages and telephone calls, accepted plaintiff's auction bids via a website, and accepted the plaintiff's payment from the state of Michigan.  *Dedvukaj v. Maloney*, 447 F. Supp. 2d 818-19.

In the present case, viewing the facts in a light most favorable to Plaintiffs, Defendant Central States transacted business in Michigan within the meaning of § 600.715(1) when its employee(s) communicated with Plaintiffs through e-mail and telephone calls and when it accepted payment on the trailer purchase through the mail

from Michigan.  Accordingly, the Court finds that Plaintiffs have made a *prima facie*

showing of satisfaction of the first prong of the test for personal jurisdiction.

**D.      Due Process Considerations**

Although personal jurisdiction may be authorized under Michigan's long-arm

statute, this Court cannot exercise personal jurisdiction in violation of the Due Process

Clause.  *Neogen*, 282 F.3d at 889.  Plaintiffs must also make a *prima facie* showing that

the exercise of personal jurisdiction does not offend due process.  *CompuServe*, 89 F.3d

at 1262.  Plaintiffs must demonstrate that Defendants have sufficient "minimum contacts"

with Michigan such that finding personal jurisdiction will not offend "traditional notions

of fair play and substantial justice."  *International Shoe v. Washington*, 326 U.S. 310, 316

(1945).   Minimum contacts exist when "the defendant's conduct and connection with the

forum state are such that he should reasonably anticipate being haled into court there."

*World-Wide Volkswagen Corp, v. Woodson*, 444 U.S. 286, 297 (1980).  Further, it is

necessary that the defendant "purposefully avail himself of the privilege of conducting

activities within the forum state, thus invoking the benefits and protections of its laws."

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

To satisfy the due process requirements for limited or specific jurisdiction, the

Sixth Circuit has articulated a three-part test:

> First, the defendant must purposely avail himself of the privilege of acting in the
> forum state or causing a consequence in the forum state.  Second, the cause of
> action must arise from the defendant's activities there.  Finally, the acts of the
> defendant or consequences caused by the defendant must have a substantial
> enough connection with the forum state to make the exercise of personal
> jurisdiction over the defendant reasonable.

*Neogen* at 889-90; *Intera v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (quoting

*Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.

1968)).  Failure to meet any one of the three prongs of the *Southern Machine* test means

that personal jurisdiction may not be invoked.  *Lak, Inc. v. Deer Creek Enterprises*, 885

F.2d 1293, 1303 (6th Cir. 1989).

1.      **Purposeful Availment**

        Purposeful availment is the "constitutional touchstone" of personal jurisdiction,

and is present where the defendant's contacts with the forum state "proximately result

from action by the defendant himself that creates a substantial connection with the forum

state." *Neogen*, *supra*, 282 F.3d at 889 (quoting *Burger King,* 471 U.S. at 475).  The

defendant must engage in intentional, purposeful contact with the forum state which

invokes the "benefits and protections" of the forum laws.  *Burger King Corp. v.

Rudzewicz*, 471 U.S. at 475-76 (*quoting Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct.

1228, 1239-40 (1958)).  Stated another way, purposeful availment requires that there be a

substantial connection between the defendant's conduct and the state which would cause

the defendant to reasonably anticipate being haled into court in that jurisdiction and that

the contact must not be "random, fortuitous, or attenuated or [based on] the unilateral

activity of another party or third person." *Burger King Corp. v. Rudzewicz,* 471 U.S. at

474-75.

        Therefore, purposeful availment is only satisfied by "something akin either to a

deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct

which can properly be regarded as a prime generating cause of the effects resulting in

10

Michigan, something more than just a passive availment of opportunities." *The Sports Auth. Michigan, Inc. v. Justballs, Inc*., 97 F. Supp. 2d 806, 811 (E.D. Mich. 2000).

The courts have considered the activities by the parties via internet websites when determining the existence of personal jurisdiction. *Dawson v. Pepin*, 2001 WL 822346, at *5 (W.D. Mich. 2001). In making a determination of sufficiency, the courts adhere to the traditional expectations of personal jurisdiction. *Id*. Therefore, the defendant must have "reached out beyond its own state to engage in transactions with residents of the forum state" in order to establish purposeful availment. *Id*. However, such "reaching out" is not established by maintaining a website that only contains information regarding a company's products and an "800" contact number. *Id*. (citing *Edberg v. Neogen Corp*., 17 F. Supp. 2d 104, 114 (D. Conn. 1998)).

The Sixth Circuit has adopted the *Zippo* "sliding scale" analysis in order to determine whether the existence of a website constitutes purposeful availment. *Neogen*, 282 F.3d at 890 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc*., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). Pursuant to this scale, websites generally fall under one of three categories of interactivity: (1) purely passive sites that only offer information for the user to access; (2) active sites that clearly transact business and/or form contracts; and (3) hybrid or interactive sites that allow users to exchange information with the host computer. *Zippo Mfg. Co*., 952 F. Supp. at 1124.

By application of *Zippo*, a defendant may be found to have purposefully availed itself of the privilege of acting in a state if it acts through a website that "is interactive to a degree that reveals specifically intended interaction with residents of the state." *Digital*

11

*Filing Systems, Inc. v. Frontier Consulting, Inc.*,  2006 WL 1663281, *3 (E.D .Mich. 2006) (quoting *Zippo*).  An interactive website can subject the defendant to specific personal jurisdiction.  *The Cadle Company v. Schlictmann*, 123 Fed. Appx. 675, 678 (6th Cir. 2005).

In *Dawson v.Pepin, supra*, the court determined that because internet users could only order products by calling the "800" number or writing to the company at the address listed on the defendant's website, the website was not interactive and, as such, the defendant's maintenance of the website was insufficient to grant personal jurisdiction. *Dawson,* 2001 WL 822346, at *5;  s*ee also Neogen, supra*, 282 F.3d at 89 (maintenance of a "passive" website accessible in the state of Michigan does not constitute purposeful availment); *Mink v. AAAA Development, LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (holding that a website that does not allow orders to be taken but provides information about a company's products and services, provides users with a printable mail-in order form, posts the company's toll-free telephone number, a mailing address and an e-mail address "does not classify the website as anything more than passive advertisement which is not grounds for the exercise of personal jurisdiction." *Id.*)

By contrast, the defendant's operation of an *interactive* website accessible from the forum can subject him to personal jurisdiction.  *Dedvukaj*, 447 F. Supp. 2d at 820 (citing *The Cadle Company v. Schlictmann*, 123 Fed. Appx. 675, 678 (6th Cir. 2005)).

In *Dedvukaj*, this Court considered whether it could exercise personal jurisdiction over a New York defendant based in part on the defendant's interaction with a Michigan plaintiff via the internet auction site www.eBay.com ("eBay").  447 F. Supp. 2d at 815-

16.   The defendant in *Dedvukaj* was selling copies of artwork on eBay misrepresented as originals. *Id*. at 822.   The defendant's eBay page indicated that he would ship anywhere in the United States, and provided the defendant's contact information. *Id*.   The Michigan plaintiff successfully bid online on two of the defendant's paintings. *Id*.   In the course of bidding and the subsequent purchase of the painting, the plaintiff spoke with the defendant over the phone and exchanged emails with him. *Id*.   The court held that because the defendant accepted business from Michigan and participated in ongoing communications with the plaintiff during the course of the online transaction, personal jurisdiction over the defendant was proper. *Id*.

In assessing internet contacts, the courts also consider whether the defendant's online activity is specifically targeted at the forum state. *Neogen*, 282 F.3d at 890.   In *Sports Authority v. Justballs Inc*., 97 F. Supp. 2d 806, 811 (E.D. Mich. 2000), the court relied heavily on the defendant's interactive website in finding that jurisdiction was proper. *Justballs*, 97 F. Supp. 2d at 813-14.   The defendant's website in that case was highly interactive in that it allowed customers to browse through the site for specific products, place selected items in a virtual "shopping cart," pay for their purchase via credit card, and track the shipment of their purchases. *Id*.   And, although the website was accessible nationwide, the court also noted that the website sold products that appeared to be aimed at Michigan residents, such as sports memorabilia with the logos of the Detroit Lions, the Detroit Tigers, and University of Michigan. *Id*.

In this case, Central States used a third-party website, www.horsetrailerworld.com, to advertise trailers it had for sale.   This site, however, is a

13

passive site that does not allow the viewer to make purchases nor contact a seller directly. The buyer has to take the additional step of using the contact information provided on the site to either call or email the seller.  With regard to Central States' own site, www.trailersokc.com, which has a "link" on www.horsetrailerworld.com, that site also merely provides information regarding the dealership and the products available, but does not provide a virtual store from which potential buyers may purchase trailers.

The Alisoglus nonetheless suggest that Central States purposely availed itself of the forum state when it emailed additional pictures and details of the trailer they had requested.  In addition, the Alisoglus point to the email and phone conversations for the payment of the balance of the purchase price as evidence of purposeful availment, as well.

Summarizing the contacts relied upon by Plaintiffs: (1) Central States advertises its products on one nationally accessible third-party website and a company website; (2) a Central States employee responded to Plaintiffs' inquiry about its trailers via telephone and via email; (3) one or more Central States employees contacted the Plaintiffs seeking payment of the remainder of the balance due on the purchase price of the trailer; and (4) Central States accepted a cashier's check for the balance which Plaintiffs mailed from Michigan.

It is worth bearing in mind that the unilateral activity of the plaintiff cannot be used to establish purposeful contact of the defendant.  "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Air Products & Controls, Inc. v. Safetech*

*Int'l, Inc.*, 503 F.3d 544, 551 (6th Cir. 2007) (citing *Burger King Corp. v. Rudzewicz*,

*supra*) (emphasis in original).  As a consequence, the actions of the Alisoglus in viewing

the third-party website and company website, along with calling to inquire about the

trailer, visiting Oklahoma to view the trailer, signing the purchase agreement, and taking

receipt of the trailer in Oklahoma are wholly unrelated to the issue of Central States'

contacts with Michigan for purposes of determining personal jurisdiction.  The fact that

Central States was aware when it entered into the purchase agreement that the Alisoglus

are Michigan residents while it is an Oklahoma resident is insufficient to establish

purposeful availment.  *See LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1301

(6th Cir. 1989).  Further, the fact that Central States was aware that the Plaintiffs would

take the trailer to Michigan is also insufficient.

The nationally accessible websites are also insufficient on their own to confer

personal jurisdiction. The Court finds that both websites are passive under the *Zippo*

analysis.  Therefore, they provide insufficient basis for personal jurisdiction.  The

determinative factors are that the websites merely provide information about products

that are available for purchase nationally, and the prospective buyers are unable to make

purchases via the websites.  The telephone communications between Central States and

the Alisoglus are also insufficient.  *See Dawson v. Pepin, supra*, 2001 WL 822346 at *5

(citing *Holt Oil v. Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)) ("[A]n

exchange of communications between a resident and a non-resident in developing a

contract is insufficient of itself to be characterized as purposeful activity"); *Stuart v.*

*Spademan*, 772 F.2d 1185, 1193-94 (5th Cir. 1985) (same).

15

For purposes of personal jurisdiction, based upon the foregoing, Central States did not have fair warning that it could be haled into a Michigan court as a result of its business activities with a resident of the state, particularly where, as here, the purchase agreement was executed by both Plaintiffs and Defendant *in Oklahoma,* and Plaintiffs accepted delivery of the trailer *in Oklahoma,* as well.   Therefore, the Court concludes that the Alisoglus have not demonstrated that the purposeful availment prong of the *Southern Machine* due process test has been satisfied.

## 2.    Arising from Defendant's Activities

The second requirement of the *Southern Machine* test is that "the cause of action must arise from the defendant's activities" in Michigan.  "Although this does not require that the cause of action arise formally and directly from defendant's contacts with the forum, the cause of action must still 'have a substantial connection with the defendant's in-state activities."   *Dean v.Motel 6 Operating L.P.,*, 134 F.3d 1269, 1275 (6th Cir. 1998).  However, where, as here, plaintiffs fail to demonstrate a sufficient level of contacts satisfy the purposeful availment prong, it is unnecessary for a court to consider the other two requirements as "each criterion represents an independent requirement and failure to  meet any one of the three means that personal jurisdiction may not be invoked."  *Lak, Inc. v. Deer Creek Enterprises,* 885 F.2d at 1303; *Dean v. Motel 6 Operating LP,* 134 F.3d at 1275 (where there is no purposeful availment, there is no reason for the court to analyze the defendant's in-state activities to determine whether the "arising from" requirement is met); *Commercial Metal Forming Group v. Utilities Optimization Group* LLC, 2011 WL 5023265 at *6 (N.D. Ohio 2011) (same).

16

Since the Alisoglus have failed to demonstrate a sufficient level of activity by Central State in Michigan to establish sufficient minimum contacts with Michigan to satisfy the purposeful availment prong, the Court need not address the arising from prong.  Briefly, however, although the Court acknowledges that the "arising from" standard is a lenient one, *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 553-54 (6th Cir. 2007), in this case, where the Defendant's contacts with the forum were attenuated, at best, more than the mere existence of a contract with a Michigan citizen is required to show that this breach of warranty action "arises from" Defendant's contacts.  *See Lak, Inc. v. Deer Creek Enterprises, supra*, 885 F.2d at 1303. Here, there is little else than the existence of a contract, and therefore, Plaintiffs would fail on this second prong, as well.

In any event, because, as indicated each of the three prongs of the *Southern Machine* test represents an independent requirement and the failure to satisfy any one prong means that personal jurisdiction may not be invoked, even if the Court were to find the "arising from" prong satisfied, because the "purposeful availment" prong has not been met, the outcome would be the same.

**3.**    **<u>Reasonableness</u>**

For sake of completeness, the Court will address the final prong of the *Southern Machine* test.

If prongs one and two of *Southern Machine* test are satisfied, then there is an inference that the reasonableness prong is satisfied, as well.  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir.1996) (citing *Am. Greetings Corp. v. Cohn*, 839

F.2d 1164, 1170 (6th Cir.1988)).  However, because the Court has found that Plaintiffs

have failed to satisfy the "purposeful availment" and "arising from" requirements, an

inference of reasonableness is not warranted in this case.

The third prong of the *Southern Machine* test mandates that "the acts of the

defendant or consequences caused by the defendant must have a substantial enough

connection with the forum state to make the exercise of jurisdiction over the defendant

reasonable."  *See Youn v. Track, Inc*., 324 F.3d 409, 419 (6th Cir.2003) (citation omitted).

Generally, when considering whether it is reasonable to exercise personal jurisdiction

over a non-resident defendant, a court considers several factors including the following:

(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's

interest in obtaining relief; and (4) other states' interest in securing the most efficient

resolution of the controversy.  *Patterson*, 89 F.3d at 1268. The Court will address each of

these factors seriatim.

First, Defendant Central States would be substantially burdened if it were

compelled to litigate this case in Michigan given the fact that Defendant does not reside

in this state. Nevertheless, courts routinely have deemed specific jurisdiction to be proper

even when a defendant would be compelled to travel.  *See Youn*, 324 F.3d at 420 (citing

*Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 911-12 (6th Cir.1988) (permitting

personal jurisdiction in Michigan over Illinois defendant); *Cohn*, 839 F.2d at 1170-71

(upholding personal jurisdiction in Ohio over California defendant)).

Second, though Michigan would have a strong interest in exercising jurisdiction

over Central States because Plaintiffs are residents of the state of Michigan, which would

have an interest in "protecting its residents' legal options," *Youn*, 324 F.3d at 419, the fact that Plaintiffs contracted with Defendant in Oklahoma and took delivery of the allegedly defective trailer in Oklahoma appears to diminish Michigan's interest.  *See Intera Corp. v. Henderson,* 428 F.3d at 618.   Although under the third consideration, Plaintiffs have a substantial interest in obtaining relief, given the fact that Central States is a resident of Oklahoma where Plaintiffs entered into the contract for the purchase of the trailer and where Plaintiffs took delivery of the trailer, it appears that as to the fourth factor, the state of Oklahoma may have a stronger interest in resolving this controversy. *See Intera*, 428 F.3d at 318.

Weighing the foregoing factors, the Court concludes that it would not be reasonable for a Michigan court to exercise personal jurisdiction over Defendant Central States.

In sum, the Court finds that the Plaintiffs have failed to present a *prima facie* case showing that exercising personal jurisdiction over Central States would not violate Due Process.

## IV. <u>CONCLUSION</u>

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant Central States' Motion to Dismiss Plaintiffs' Amended Complaint **[Dkt. No. 19]** is GRANTED.  Accordingly,

IT IS FURTHER ORDERED that Plaintiff's Complaint against Defendant Central States Thermo King of Oklahoma is DISMISSED.


<u>s/Gerald E. Rosen</u>
Chief Judge, United States District Court


Dated: May 11, 2012



I hereby certify that a copy of the foregoing document was served upon counsel of record on May 11, 2012, by electronic and/or ordinary mail.

<u>s/Ruth A.Gunther</u>
Case Manager
(313) 234-5137